Good morning. My name is Jesse Cantor. I represent Mr. Perryman. And the issue in this case is did law enforcement violate the Fourth Amendment when law enforcement entered Mr. Perryman's car without a warrant? where Mr. Perryman was handcuffed and in custody under arrest for driving with a suspended license. And at the same time, his passenger, Anthony, was in handcuffs, removed from the car, and on the sidewalk. And in this particular case, the district court relied on testimony from the officers that they, at some point, were going to allow Mr. Perryman and Anthony back to the car once they decided to release them. The district court found that because of their future intent to eventually release these two gentlemen back to the car, this was no longer a Gantt case. This was more of a Michigan v. Long. And the court relied on Long. The court relied on this unpublished Sixth Circuit opinion, United States v. Lurie. And the court also relied on Justice Scalia's Gantt concurrence. Neither Long nor Lurie would support the search, and the Gantt concurrence actually supports Mr. Perryman. So to take it step by step, starting with Long, to understand why Long does not apply and does not support the search, we need to understand why Long was decided in the first place. And we can answer that question when we look at Justice O'Connor's opinion at the very end. At the very end of the opinion, Justice O'Connor, in the Long opinion, focuses really on three things. The vulnerability of the officers, whether or not the suspects are under arrest, and the quick decision-making that the officers must make if someone is not under arrest. And what she said specifically was, And we stress that a terror investigation involves a police investigation at close range when the officer remains particularly vulnerable, in part because a full custodial arrest has not been affected and the officers must make a quick decision as to how to protect themselves. Under those circumstances, a protective sweep would be appropriate. We don't have that in our case. Because in our case, the police had the entire situation under control. Perryman, my client, was under arrest in handcuffs, far removed from the vehicle, in custody in a vehicle by the officers on admission. They arrested him, they searched him incident to arrest, found no weapons, and moved him into the back of the patrol car. Same thing with Anthony, the passenger. The police testified that they removed Anthony from the vehicle. The court made a finding, the district court made a finding that he had been placed in handcuffs before the search. The police frisked him, they found no weapons, removed him from the vehicle. So at that time, Your Honor, the police not only had complete control, but there was no particular vulnerability at that point. They can make decisions at their leisure. The circumstances did not require quick decision making like what Long required. And therefore, because there was no urgency, Long does not protect the particular search. And this is distinguishable from Lurie, where the driver in Lurie was not in handcuffs. And when you're not in handcuffs, then you have that situation where the suspect or defendant or occupant can get access to the car immediately. Turning to the Gantt concurrence, where I submit that concurrence helps us, Justice Scalia focused on the no-arrest situation where the defendant, quote, will be allowed to return. And why that helps us here is because when we look at the testimony of the officers who testified that at the time of the search, they didn't make the decision. They had not made the decision to allow Mr. Perryman or his passenger back to the car. They hadn't decided that yet. Counsel, that's what troubles me. And I'm going to ask the government counsel about this too. What they testified to was their intent, that they intended to allow Anthony, I believe it's Anthony, the other Perryman who was in handcuffs, to go retrieve his belongings before they were going to impound it. Is that sufficient to invoke the safety concerns in Long? No, it's not, because what they actually testified, and this is at the excerpts of 26, we didn't know at the time whether we were going to let Anthony or Antonio back into the vehicle. So they intended to release Mr. Perryman. They intended to release Anthony. And stepping back for a second, they didn't have to necessarily release my client because he was under arrest. If they wanted to, they could have taken him to jail. But the fact that they intended to release the two, because of the circumstances, they didn't necessarily have to allow either back to the car. And, in fact, when we look at the Gantt concurrence, where Justice Scalia makes a finding that inevitably these guys are going to be allowed back to the car or the suspect will be allowed back to the car, that simply did not exist here because the officers, if they were really concerned about danger, for example, had several options. They could have called for backup before releasing these guys. They could, since the car was parked in a transit zone and had to be removed regardless, they could have released them after the car had been removed. They could have allowed Mr. Perryman to call a tow company at his own expense to have the car removed to his residence, which was nearby. After all, he was driving home from work. There were other factors, other options that the officers had instead of allowing these guys back to the car. And that's what's distinguishable from the Griffin case, that judge that the district court also relied on, because in the district court, I'm sorry, in the Griffin case, inevitably it was a foregone conclusion that the defendant would be allowed back to the car because the defendant had not been arrested for any particular crime. So, for example, here, let's say hypothetically Mr. Perryman had not been suspended in the third degree. He was stopped for tinted windows, driving a particularly loud-looking vehicle in a bad neighborhood. The police could have certainly cited him. And then it would have been a foregone conclusion that he would have inevitably returned back to the car had he not been suspended. But because he was suspended in the third degree, there was nothing that required the police to allow these gentlemen back to the car. They testified that they didn't really know if they were going to allow them back to the car. And because of that, it was improper against Long, contrary to Long, for the police to go into the car and do this protective sweep without a warrant. Counsel, did the officers ever ask Anthony if he needed to return to the car to retrieve any personal belongings? In the court's order, there was a finding that the district court made that neither asked to go back to the car. And we know that also because even the officers made it clear that when Anthony was removed, he had his backpack. He was a passenger. He had his backpack. He was frisked. And there was nothing that he – and because he had no possessory interest in the car, there was no reason for the police to allow him back to the car. And let's say hypothetically speaking, let's say my client, who did have a possessory interest, wanted, say, maybe his paycheck from the car. He certainly could have – the officers, because they were not particularly vulnerable, did not have to make quick decisions. They could have asked for his consent for the limited purpose to go maybe into the glove box to get a paycheck. And then if Mr. Perryman said, you know what, on second thought, I don't want you near the car, the officers didn't have to allow him back into the car. They could have released him after the car had been removed or maybe after backup had arrived. And then finally, getting to inevitable discovery, because this is important as well, what the court has to rely on or what we rely on is the State v. Taylor decision. Just because someone is suspended in the third degree where the vehicle is subject to impound doesn't necessarily mean that the vehicle is going to be impounded. The State Supreme Court requires the officers to consider reasonable alternatives. And I had just gone over some of these reasonable alternatives. For example, allow my client to call a tow company to have the car removed to his residence. And that would have been a reasonable alternative to the police doing an impound. The fact that the police made the decision to go into the car to do the sweep because they were going to impound shows that they never intended to explore reasonable alternatives. Because had they done, if that was their intent, there would have been no need for them to go into the car right away. So if the court finds that inevitable discovery does not apply, then, of course, everything gets suppressed. If the court finds inevitable discovery does apply, reversal is still required because you cannot suppress a confession. And Mr. Perryman, by the way, confessed to all of this post-arrest. And you take the confession out of the picture, there is no way. Roberts. You said you cannot suppress the confession. I think you meant to say we still should suppress the statement. Well, the statement does not fall within the exception to the exclusionary rule. So the statement goes out. It's not harmless because the gun was found underneath the passenger seat. So, of course, the defense without the confession would be the gun doesn't belong to Mr. Perryman. The gun belongs to the passenger because the passenger was actually sitting on top of the gun. So even if the inevitable discovery exception applies, if there's a Fourth Amendment violation, reversal is still required. We'll give you a little bit of time in rebuttal, okay? Thank you. May it please the Court. Teal Miller on behalf of the United States. The search that led to the discovery of the firearm in this case was a permissible protective sweep under Michigan v. Long. And the reason we know that is a couple of different factors. Michigan v. Long describes effectively a Terry stop of a car, and that's what this was. If you look at Mr. Perryman's testimony, he said his testimony was that the handcuffing of Anthony happened simultaneously to the protective sweep of the car. And Michigan v. Long teaches that when officers are in a quickly developing situation in which they're looking at suspicion, they have reasons to believe that the particular suspects are dangerous, and that's a critical distinction from Gantt, they can do a protective sweep of a car for their own safety. And Gantt makes clear that that's true so long as they have two things, one, reasonable belief that the suspects are dangerous, and two, that they will have access to the car at some point in the encounter. And here we know that Anthony would have had access to the car at the end of this encounter. How do we know that? I mean, the police were in a position to entirely control this situation. There's a suggestion here of a kind of sort of self-created exigency, which is a little bit troubling. They don't why do they have to give him access to the car? I don't understand that. Well, they had to release Anthony because they had no basis to arrest him. So they were involved in a Terry frisk of Anthony. And Mr. Perryman's testimony. Right, well, he couldn't. I mean, he has a suspended license as well. He's not an option for driving the car. Once he's free, they could have presumably said, you can't go back into the car. But what they said is that in our normal practice, when we have arrested someone on a suspended license and we're going to impound their car, we give them an opportunity to go back into the car. And that's so their thinking is we're frisking Anthony and handcuffing him, and we're doing a protective sweep of the car before we say, would you like to go back into the car? And they never get to asking that question. Excuse me, doesn't your argument just create a really broad exception to Gant in the sense that their testimony is all about what they intended to do. And in fact, that didn't happen. They did things contrary to what they intended to do in terms of releasing Anthony. And I could see in almost any case, the police officers can do this kind of a search and just make up some future intent of letting someone go back into the car that would create a danger to them. And they didn't have to do that, and they didn't do it. Instead, they searched the car. And I'm just wondering whether at some point this long exception needs to be a little tighter. Your Honor, I'm going to take issue with your suggestion that they didn't do what they said they were going to do. But first I want to explain why I don't think... Excuse me, excuse me. First of all, they didn't follow the proper procedures for impounding the car. You agree with that under Washington? I don't, and I'm happy to address that in a minute. But let me first address... But secondly, no, counsel, secondly, they didn't release Anthony and let him go to the car. They did eventually release Anthony. But they didn't let him drive the car away. No, and they never intended to let him drive the car away. I'm not suggesting that. The record shows that they did release Anthony from the scene. Michigan against Long does not swallow Gant because there are two important critical distinctions that won't apply in every case. The first is there has to be a reasonable belief of dangerousness. If the officers say that I reasonably believe this guy was dangerous, so I searched the car and I was going to let him go, if they don't have specific and articulable facts that show he was dangerous, that's not credible. The second factor is that it has to be... But they didn't have to let him go back to the car. He had a suspended license. They both had suspended licenses. They could have... They had so many other alternatives. They could have impounded the car and not let either one of them go back. Your Honor, it is true that they could have ordered him not to go to the car, but they had a reasonable suspicion that Anthony was dangerous, and therefore they did not have to rely on him not going back to the car. That's the whole point of Michigan against Long. We're talking about the limited set of cases in which the officers have a reasonable basis for believing someone they've stopped in a car is dangerous. And in those cases, when there is a chance that that person... But the police can always say that, Counsel. The police can always say that. Why did they stop the car to begin with? In this case, the reason they stopped the car is not the credible basis on which they believe it was dangerous. In Gant, they didn't have a credible basis for believing that the defendant was dangerous. Well, didn't they stop this car because there was a broken headlight? Excuse me? If they stopped a car for that reason, they couldn't say that they had a reasonable basis for saying that the driver was dangerous. Here, they did have such a basis. Both of the drivers, excuse me, the driver and the passenger, had recent felony convictions on their record. The car was the gang colors of a gang that had committed a homicide against a rival gang three weeks earlier within a stone's throw of this parking lot. Anthony had been drinking. There was a knife in the car. All of those things distinguish this from the case where the police stop a car because it has a broken headlight and then do a protective frisk, and Long does not swallow Gant for that reason. The officers also have to be able to credibly testify that they were going to release him, and there will be cases where reasonable suspicion develops after you stop a car because of a broken headlight, but it's not credible that you're going to release him because the reasonable suspicion is of some offense for which there's no suggestion that under state law a suspect would ever be released. Here, it's quite common for suspects to be released for driving under a suspended license. And setting that aside, if you had a passenger who wasn't dangerous, the fact that you were going to release that passenger in this situation might not be a basis to allow a protective sweep of the car. But here, we have suspicion. We have reasonable, articulable facts as to both of the people in the car as to dangerousness. And that is why Long does not swallow Gant, and Long applies here. Now, if you'd like me to address the impound, the Tyler case, on which counsel has relied for the suggestion that proper impound procedures weren't followed here, it says that officers have to consider reasonable alternatives. But the Tyler case involves a car that's been pulled over on the side of a highway. This is a car in an active transit zone, in the driveway for a park-and-ride for buses at the end of rush hour on a Friday. And the reasonable alternative of having the passenger drive the car away is not available because the passenger has a suspended license. And under that situation, under Washington law, it would be reasonable to impound a car. He says, I could have called a private tow truck, but that's not reasonable because it's no faster and it's probably slower because one assumes reasonably that a police officer's call for an impound would be acted on more quickly than a private call for an impound. So even if you believe that the gun was not properly found under Michigan v. Long, this car would have been impounded and inevitable discovery would protect the search of the gun. And I want to address quickly why the statement would have come in, too. Under the inevitable discovery rule and the fruits of the poisonous tree doctrine, the normal case is you have physical evidence and then someone speaks when confronted with that physical evidence. Later on, the physical evidence is suppressed and the question is, can the statement still come in? And you look at attenuation. In this case, the physical evidence still would come in. And so there has to be some reason to believe that the way it was presented to him caused him to speak and he wouldn't have spoken. He wouldn't have given a statement. And here we know that's not true because he was Mirandized and his motive, which was to protect Anthony, stayed the same. And so there's just really no basis for speculating that he wouldn't have spoken in this context. And I think Nix actually is a good illustration of that principle and how you think about what would have happened. And it's a case where it's the opposite situation. The defendant gave a statement that the Supreme Court said should be suppressed as an unlawful interrogation. This is the Christian burial speech case. Roberts. I wonder if we could just quickly return to a point we were talking about earlier. Obviously, we're not in the business of second-guessing police decisions. But what remains very puzzling to me is that Perryman was under arrest, could have remained under arrest, and yet the police testimony is that despite the fact they could have kept him under arrest, they were prepared to release him, give him access to the vehicle, when they believed he was a dangerous individual and might have access to some kind of weapon in the car. It's difficult to understand that sort of sequence of thinking, and it does create the suggestion that they were trying to create a situation which would justify a search that would otherwise not be justifiable. Even if you think that's true, the same thing can't be said as to Anthony. They had no basis to hold him. So even if you think the fact that they had articulable facts that made them suspicious of his dangerousness is not enough to arrest him, but is enough to do a frisk. And I think that's actually not so uncommon under Terry. Terry is about on-the-street judgments of developing facts and the police officer's response to them, and it's about reasonableness. And remember, the protective sweep of the car that happened here, looking in one window, looking under the seat, seeing nothing, coming to the other side, looking under the window, seeing the barrel of a gun under a search. This is a very limited search. And Terry says we look at that sort of developing fact under the reasonableness doctrine. And so I could arrest you. I believe that you are dangerous and might have access to a weapon, but I'm just going to do a protective sweep, and if I don't find anything, I'm going to let you go. It's actually quite a reasonable way to handle a street encounter with someone as opposed to hauling them off to jail. Counsel, I'm still having trouble with, and I'm sure Judge Owens will let you go over time, so don't interrupt me because it's difficult enough to communicate by video. But I'm just still concerned by the fact that they didn't have to let Anthony go back to the car, that saying that they were going, they intended to let Anthony go back to the car, that's what creates the potential for dangerous or safety concerns, which invokes long. And so how do you respond to that, that they didn't have to let Anthony go back to the car? My response is twofold. One, they had to let him go, and once they let him go, he was out of their control and might have gone back to the car. So you can ignore their testimony about what they planned to do. We know, and there's no debate in this case, that they had to let him go. And once he was gone, sure, you could imagine them ordering them away, but again, given that they had reasonable suspicion that he was dangerous, they don't have to trust that he isn't going to reach for a weapon in the car. But your whole inevitable discovery argument is based on that they were going to impound the car and that everything would have been found anyway. Yes, but it would have taken some amount of time to impound the car, and I'm not aware of any authority that says they could have held him in handcuffs, given that they weren't going to arrest him, given that they didn't have probable cause to believe that he had committed an offense, that they could have held him in handcuffs until a tow truck showed up. No, I'm not saying that. I'm suggesting they didn't have to let him go back to the car. They didn't have to invite him to go back to the car. I agree with that. But they couldn't have stopped him from going back to the car if he had, once they released him, lunged for it. He was sitting right next to the car when he was in handcuffs. So good. The other answer, I said I had two responses, and the other answer is on page 57 of the record, where Perryman is testifying, and he says, and he was getting put in cuffs, referring to Anthony, when they were putting the cuffs on him, the court says yes, and he says, the guy, the other guy, meaning the other officer, he had already started searching the car. So the court is sort of analyzing this as first they did this, and then they did this, and then they did this. But, in fact, this was a fluid Terry stop. And one officer was doing one thing while the other was doing another thing. So as Anthony was being brought out of the car and being put into cuffs, one officer was doing a protective sweep of the car because that's allowed under Michigan against law, and they're very clear that what they did was a frisk of a car and not a search incident to arrest. Thank you very much, Counsel. Thank you, Your Honor. We ask that the judgment be affirmed. If we could give four minutes. So, in terms of the fluid situation, that's not what the court's finding was because if we look at the court's order, the court, district court, found that the officers had searched Anthony's backpack, they had frisked both gentlemen, and shortly thereafter, after they had been handcuffed, after both had been handcuffed, bottom of page 2, shortly thereafter, that's when the search began. So we're not talking about a fluid situation. Regardless of what Mr. Perryman testified to, the court's finding was that there was a search of these two individuals, a Terry Patdown search of their persons, no weapons were found, they were handcuffed, removed from the vehicle, then we have the search, and that's what the court found. In terms of allowing Anthony back to the car, again, long applies only when we're talking about quick decision-making, circumstances that require quick decision-making, and to answer the question about whether the police had to allow Anthony back to the car, the intent to release is distinguishable from intending to release them to the car because they had already determined, the police had already determined, that Anthony was not armed, that he had no belongings in the car, he already brought his backpack out, he had no possessory interest. In addition to instructing him to walk in the opposite direction of the vehicle, there was nothing that prevented the police from saying, we will release you, Anthony, but just hang tight until we get some backup here. And then once backup arrives, which should be any minute, then you can go. But there was nothing that required them to allow Mr. Perryman or Anthony back to the car because the record is clear, neither of them even expressed an interest in going back to the car. No urgency. And to answer Your Honor's question about why the car was stopped in the first place, it was stopped because of tinted windows. And again, had there been no suspension of the license, then the Griffin opinion would be applicable because, and even the Gantt concurrence, because had there been no suspended license, then it would be a foregone conclusion that Antonio, my client, Mr. Perryman, would necessarily be allowed to go back to the car to remove it. And that's when you get into those line of cases. But because of the suspended license, because the car had to be removed from the scene, regardless of whether it was going to be impounded, it had to be removed, there was nothing that required the police to impound the vehicle or allow these gentlemen back to the car. With respect to inevitable discovery, when counsel says that it would be unreasonable to allow someone to say that they could have called someone else as a reasonable alternative, Tyler says that that is completely reasonable. In fact, that's what the Tyler decision is about. You have a vehicle that had to be moved from the scene, and instead of impounding or before impounding, the police gave the driver the police's cell phone and said, make a call. If you can find someone to remove the car within 30 minutes, great. If you can't, then we're going to have to move it. And the fact that the police in our case immediately go into the passenger compartment, regardless of the extent of the search, they are in the compartment, they're looking around. That's a search. That's what the court found. The court found that that was a search. Regardless of that, the police never explore these reasonable alternatives that are listed in Tyler. Let me ask you, counsel, about the search itself. I didn't see anywhere in the record. I may have missed it. When the officer went to look in the car and found the firearm, did he testify or is there anything you'd like to suggest? Was the firearm visible as soon as he opened the door? Or did he actually have to really kind of start digging and looking for it before it turned up? Well, the testimony, because I did the evidentiary hearing, and I remember this and it should be in the transcripts, but the testimony was that he saw what appeared to be the butt of a gun as he opened the door and peeked inside. And it was on the driver's side. So he had to actually physically somehow get inside the car. And that's what the court found, because the court found that there was a search, but the district court found that it was justified under Terry. But there was necessarily that intrusion into the car, and I believe they even had to, he even had to move, I guess, the car seat back a little bit just to see that it was a gun. Once he determined it was a gun, then he applied for a search warrant. So there was enough of an intrusion to create a Fourth Amendment concern here. And so if this court finds that that intrusion violates the Fourth Amendment, then we get into inevitable discovery and so on with respect to the confession as well. All right. Any other questions? Thank you very much, counsel. Thank you both for your argument. This matter is submitted.
judges: Lipez, Wardlaw, Owens